I agree that the decision of the trial court should be affirmed, but I would address the issue differently.
The majority correctly identifies the central issue in this case: "[W]hat are the respective rights of Yancey and Wadsworth upon Wadsworth's default for non-payment?" In undertaking an analysis of these rights it is important to conceptualize the transactions clearly. There are, in fact, two security transactions involved in this case. First, Yancey Brothers, the seller, became a secured party in relation to the equipment sold to Wadsworth, the debtor/purchaser. Second, upon the transfer of its security agreement to the Bank, the Bank became a secured party with Yancey Brothers being its debtor. While the Bank's security interest in the chattel paper or in the collateral itself certainly would make it an interested party on repossession or disposition of the collateral, I find no statutory authority for cutting off the seller's rights on return or repossession of the underlying collateral.
The appellant argues that Yancey no longer owned the chattel paper at the time of the repossession, while the appellee maintains that the transfer to the Bank was not a sale but merely a transfer for security. The Uniform Commercial Code recognizes that it is not always necessary to distinguish these two transactions:
 "Commercial financing on the basis of accounts . . . and chattel paper is often so conducted that the distinction between a security transfer and a sale is blurred, and a sale of such property is therefore covered by [Article IX] whether intended for security or not. . . . The buyer then is treated as a secured party, and his interest as a security interest."
Official Comment 2, Ala. Code § 7-9-102 (1975).
The U.C.C. does not directly address the issue of the rights of the holder of chattel paper in the underlying collateral. However, the Alabama version of the U.C.C. does make explicit provision for those situations in which the seller/assignor repossesses the underlying collateral:
 "(5) If a sale of goods results in an account or chattel paper which is transferred by the seller to a secured party, and if the goods are returned to or are repossessed by the seller or the secured *Page 1348 
party, the following rules determine priorities:
". . . .
 "(b) An unpaid transferee of the chattel paper has a security interest in the goods against the transferor."
Ala. Code § 7-9-306 (5)(b) (1975). Because of the operation of § 7-9-306 (5)(b), on return of the goods to the seller, the holder of chattel paper has a security interest in the underlying collateral which is superior to the interest of the seller.
This approach adequately protects the secured parties regardless of whether the transaction is an absolute sale or an assignment for security of the chattel paper. In either case, following the "transfer" of the chattel paper, on repossession or return of the goods to the seller, the bank/secured party has an interest in the collateral superior to that of the seller/secured party. Again, however, the seller's interest is not completely cut off. The Comments indicate that the nature of the seller's interest in the collateral will depend upon the agreement between the seller and the bank:
 "In cases of repossession by the dealer and also in cases where the chattel was returned to the dealer by the voluntary act of the account debtor, the dealer's position may be that of a mere custodian; he may be an agent for resale, but without any other obligation to the holder of the chattel paper; he may be obligated to repurchase the chattel, the chattel paper or the account from the secured party or to hold it as collateral for a loan secured by a transfer of the chattel paper or the account."
Official Comment 4, Ala. Code § 7-9-306 (1975) (emphasis added).
In the case before us, I would hold that Wadsworth has no right or standing to raise an issue as to the nature of the relationship between Yancey Brothers and the Bank. As between these parties it appears that there is no dispute involving the action taken to dispose of the collateral and that the U.C.C. provides adequate protection of their conflicting interests in the event of a dispute. Thus, I would affirm the trial court's judgment.
SHORES, J., concurs.